# EXHIBIT B

COMMONWEALTH OF MASSACHUSETTS

WORCESTER ss.                                    SUPERIOR COURT
                                                 CIVIL ACTION NO.

                                                 *15-0014*

_____
                                        )
KEVIN J. KIELY, ESQ.,                   )
                                        )
        Plaintiff,                      )
                                        )            FILED
                                        )     IN THE SUPERIOR COURT
        v.                              )     FOR THE COUNTY OF ESSEX
                                        )
JOHN CANTY,                             )           JAN 07 2015
                                        )
        Defendant.                      )
                                        )            CLERK
                                        )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR EXPEDITED HEARING
ON ARBITRABILITY AND STAYING THE ARBITRATION AS TO PLAINTIFF
KEILY PENDING FURTHER ORDER OF THE COURT**

**PROCEDURAL & FACTUAL BACKGROUND**

Plaintiff Kevin J. Kiely, Esq. ("Kiely" or "Plaintiff") filed this against Defendant John

Canty ("Canty" or "Defendant") seeking a determination that Kiely is not a proper party to a

pending arbitration.  By this Motion he seeks to stay the arbitration only as to him pending a

final determination of whether Kiely is a proper party to the arbitration.

This case arose from a 2012 suit American Express Bank FSB ("AmEx Bank") filed in

Dudley District Court against Defendant Canty alleging monies owed pursuant to a line of credit

contained in a Business Capital Line Premium Agreement between Canty and AmEx Bank (the

"Agreement"), (attached to the Complaint as Exhibit 2).  Attorney Kiely represented AmEx

Bank in its District Court suit against the Defendant.

1

On January 14, 2014, Defendant Canty filed an arbitration action according to the Arbitration clause in the Agreement.  On July 14, 2014, the Dudley District Court entered a judgment of dismissal a motion to compel arbitration.  *See* Exhibit A to the Motion.

In the arbitration, which he initially brought against AmEx Bank, Defendant Canty filed a Motion for Joinder, seeking to include Plaintiff Kiely in the arbitration.  Plaintiff Kiely is <u>not</u> a signatory to the Agreement, and he timely filed his Opposition to that Motion. A hearing was held on the Motion by telephone conference on September 5, 2014.   Mr. Kiely was not represented at the time of the telephone conference.

In his decision allowing the joinder of Plaintiff Kiely, Arbitrator Cratsley appears to have relied on a letter that Kiely wrote on January 28, 2014 to the clerk of the Dudley District Court on behalf of AmEx Bank stating that AmEx Bank assented to the arbitration.   In his letter Attorney Kiely wrote:

> Regarding the defendant's motion to compel private arbitration and dismiss plaintiff's claim or in the alternative to state (sic) proceeding pending arbitration, the plaintiff will assent to proceedings being stayed pending completion of the arbitration.

Regarding the above letter, Arbitrator Cratsley stated:

> For confirmation of Attorney Kiely's role in the Dudley District Court case of AMEX Bank v. John Canty, see his letter of January 28, 2014 to the Clerk of the Dudley Court assenting to Canty's motion to compel private arbitration and stay court proceedings.  His assent ultimately led to this pending Arbitration at JAMS for the same dispute.

Arbitrator Cratsley appears to have incorrectly enlarged Mr. Kiely's role as counsel for AmEx Bank by suggesting that Mr. Kiely assented to the arbitration. AmEx Bank, not Mr. Kiely, assented to the arbitration.  Mr. Kiely merely wrote in behalf of his client to inform the Dudley District Court that "the plaintiff will assent" to stay the arbitration.

As explained below, the question whether a non-signatory to an agreement to arbitrate is a "'gateway dispute' that is an issue for the court, and not the arbitrator, to decide in the first

instance." *Walker v. Collyer*, 85 Mass.App.Ct. 311, 317 (May 23, 2014). As further outlined below, Plaintiff Kiely objects to his being compelled to arbitrate under the Agreement. He seeks a stay of the arbitration as to him only, and after the Court can schedule a hearing, a judgment declaring that he is not a proper party to the pending arbitration.

## ARGUMENT

### A.  An expedited hearing is appropriate to resolve the dispute as to whether an agreement exists.

The Superior Court may stay an arbitration proceeding commenced or threatened if it finds that there is no agreement to arbitrate. G.L. c. 251, § 2(b). When there is a dispute as to a material fact, "the judge conducts an expedited evidentiary hearing on the matter and then decides the issue." *McInnes v. LPL Financial, LLC*, 466 Mass. 256, 261 (2013). An expedited evidentiary hearing would allow the court to resolve disputed issues of fact so that it may summarily determine whether the underlying claims should be resolved by an arbitrator or the court. *Id.* at 265 (citing to *St. Fleur v. WPI Cable Sys./Mutron*, 450 Mass. 345, 353 (2008)). When "there is not such a dispute, the judge resolves the issue as a matter of law." *McInnes* at 256.

### B.  Arbitrability is an issue for the Court – not the Arbitrator – to decide.

Massachusetts law governs the issue of whether a non-signatory to an arbitration agreement can be compelled to arbitrate. That question was addressed in *Walker v. Collyer*, 85 Mass.App.Ct. 311 (May 23, 2014), which involved a medical doctor treating a patient at a nursing home. The patient died, and the patient's estate sought to compel the doctor, a non-signatory, to arbitrate malpractice claims through the arbitration clause in the contract between the nursing home and the patient. The court held that the question whether the doctor was bound by the arbitration agreement was a "gateway dispute" that was an issue for the court, and not the

arbitrator, to decide in the first instance. 85 Mass.App.Ct. at 317 (citing *Massachusetts Hy. Dept. v. Perini Corp.*, 444 Mass. 366, 375-76 (2005) (quoting from *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002)).

In order to require the parties to arbitrate the question of arbitrability, courts require "clear and unmistakable evidence of intent." *Walker*, 85 Mass.App.Ct. at 17 (citing *Massachusetts Hy. Dept. v. Perini Corp.*, 83 Mass.App.Ct. 96, 100-101 (2013)). Where "a party 'attacks the very existence of an agreement, as opposed to its continued validity or enforcement,' a court must resolve the question of arbitrability." *Walker* at 317 (quoting *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 317 (5th Cir. 2011)).

The agreement at issue in *Walker* discussed a "wide array of parties to which it applies," but the court could not say that it "clearly and unmistakably" showed that the patient and the doctor agreed to arbitrate questions about arbitrability. 85 Mass.App.Ct. at 318. Because the doctor did not "personally [sign the agreement], it certainly follows that there is no 'clear and unmistakable' evidence that [he] intended to delegate questions of arbitrability to the arbitrator.'" *Id.* (quoting *DK Joint Venture 1*, 649 F.3d at 317 n.9); *see also PaineWebber Inc. v. Elahi*, 87 F.3d 589, 599 (1st Cir. 1996) ("certainly a party who did not sign the agreement did not consider who should decide arbitrability").

## C.     Plaintiff cannot be compelled to arbitrate as an alleged agent of AmEx Bank

Defendant Canty appears to suggest that Plaintiff Kiely can be compelled to arbitrate as the agent of AmEx Bank.  The *Walker* court addressed the circumstances under which a non-signatory can be compelled to arbitrate by a signatory under an agency theory.  *Walker* makes clear that the applicable law would only allow the binding of the principal (AmEx Bank) by its

agent's actions, not vice versa.  *Walker* at 323.  As in Walker, Kiely cannot be compelled to arbitrate under the agency exception.  *Id.*

Moreover, Kiely does not concede that he is an agent of AmEx Bank by representing it in the Dudley District Court matter.  The applicable clauses list numerous parties to include in arbitration, but nowhere do they list attorneys.  Defendant Canty's attempt to bring attorneys into the ambit of parties to be included in arbitration fails to recognize that the unique role and relationship between attorney and client is much more than one of simple agency.  Significantly, Defendant Canty can point to no case in which an arbitration agreement that does not explicitly cover attorneys could be enforced against a non-signatory attorney.

**D.      Plaintiff cannot be compelled to arbitrate on an estoppel theory.**

The *Walker* court outlined circumstances under which non-signatories can be compelled to arbitrate disputes based on two theories of estoppel.  The first, "direct benefits estoppel," allows a signatory to compel to arbitration a non-signatory party receiving a direct benefit from an arbitration agreement. *Walker* at 319 (citing *Thomson-CSF, S.A. v. American Arbitration Association*, 64 F.3d 773, 778 (2d Cir. 1995)).  The second theory allows a non-signatory to compel a signatory to arbitrate when (a) the non-signatory has a close relationship with a signatory and (b) the underlying issues for arbitration are intertwined with an agreement the estopped party has actually signed.  *Walker* at 319 (citing *Thomson-CSF* at 779).

As in the *Walker* case, neither theory of estoppel can be used to compel Kiely to arbitrate. Regarding direct benefits estoppel, Kiely did not "knowingly exploit" the Agreement (*see MAG Portfolio Consult GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001), nor did he "knowingly accept[ ] the benefits" (*see id.* (quoting *Deloitte NorAudit A/S v. Deloitte Haskins & Sells*, __ U.S. __, 9 F.3d 1060, 1064 (2d Cir. 1993)).  Even assuming Kiely could opt in to the

Agreement and thereby benefit by enforcing it, that minimal, theoretical benefit is not sufficient to compel him to arbitrate if he decides not to do so. *Walker* at 320.

The alternative form of estoppel is equally inapplicable to the factual scenario here, where a signatory seeks to compel a non-signatory to arbitrate. *See Thomson-CSF*, 64 F.3d at 779 (discussing the distinction between forcing a non-signatory to arbitrate and allowing a non-signatory to compel a signatory to arbitrate). Here, as in *Walker*, a signatory (Canty) seeks to compel a non-signatory (Kiely) to arbitrate based on his relationship with another signatory (AmEx Bank). But this alternative form of estoppel is limited by case law and principles of agency and contract law to scenarios in which non-signatories seek to compel signatories to arbitrate. Therefore, Kiely cannot be compelled to arbitrate under this theory.

## CONCLUSION

Based upon the foregoing, Plaintiff Kiely respectfully requests that this Honorable Court schedule a hearing on an expedited basis to determine the question of arbitrability in this case.

Respectfully submitted,

KEVIN J. KIELY, ESQ.

By his attorneys,

Dated: January ___, 2015

_____
Damian R. LaPlaca, BBO# 551369
Richard L. Levine, BBO# 297040
dlaplaca@nkmlawyers.com
rlevine@nkmlawyers.com
NELSON KINDER + MOSSEAU PC
Two Oliver Street, 10th Floor
Boston, MA 02109
(617) 778-7500 (Tel.)
(617) 778-7501 (Fax)

EXHIBIT A

| JUDGMENT OF DISMISSAL | DOCKET NUMBER 1264CV000671 | Trial Court of Massachusetts District Court Department Civil Session |
|---|---|---|

CASE NAME
American Express Bank FSB vs. John Canty

PLAINTIFF(S) WHO ARE PARTIES TO THIS JUDGMENT

American Express Bank FSB

COURT NAME & ADDRESS

Dudley District Court
279 West Main Street
Dudley, MA 0157 I

DEFENDANT(S) WHO ARE PARTIES TO THIS JUDGMENT
John Canty

NEXT COURT EVENT (IF ANY)

**No Future Event Scheduled**

ATTORNEY (OR PRO SE PARTY) TO WHOM THIS COPY OF JUDGMENT IS ISSUED
Jonathan A. Carnes, Esq.
The Law Offices of Jonathan A. Carnes
P.O. Box 51438
Boston, MA 02205

FURTHER ORDERS OF THE COURT
Motion to stay or continue pretrial heard, and denied. Bibaud, Hon. Timothy M
Motion to compel arbitration and dismiss without prejudice heard, and allowed. Hon. Timothy M Bibaud

### JUDGMENT OF DISMISSAL

On the above action, upon motion for dismissal, it is hereby ORDERED AND ADJUDGED by the Court, or judgment is hereby entered directly by the Clerk-Magistrate in accordance with the Massachusetts Rules of Civil Procedure, that this action be dismissed. and that the Plaintiff(s) named above take nothing (Hon. Timothy M Bibaud)

### NOTICE OF ENTRY OF JUDGMENT

Pursuant to Mass. R. Civ. P. 54, 58, 77(d) and 79(a), this Judgment has been entered on the docket on the "Date Judgment Entered" shown below, and this notice is being sent to all parties.

| DATE JUDGMENT ENTERED | CLERK-MAGISTRATE/ASST CLERK | |
|---|---|---|
| 07/14/2014 | X | |

006

www.mass.gov/courts

Date/Time Printed: 08-06-2014 08:36.17

# EXHIBIT B

NOTICE OF CLAIMS
JAMS RESOLUTION CENTER
BOSTON, MA

| | | |
|---|---|---|
| JOHN CANTY | ) | |
| | ) | |
| Claimant, | ) | |
| vs. | ) | No: <u>1400014758</u> |
| | ) | |
| AMERICAN EXPRESS BANK, FSB | ) | |
| (and related parties and co-parties) | ) | |
| | ) | |
| Respondent | ) | |

## CLAIMANT'S MOTION FOR JOINDER OF PARTY RESPONDENTS TO CLAIMANT'S NOTICE OF CLAIM

Claimant respectfully moves to join certain parties as party respondents to his Notice of Claim. Such parties are jointly and severally liable, along with initial Respondent American Express Bank, FSB (hereafter "AMEX"), for the incurred damages resulting from Claimant's claims. The necessary parties are identified further herein, with supporting points and authorities.

## I.  THE QUALIFIED PARTIES NECESSARY TO JOIN FOR JUST ADJUDICATION

**1.  American Recovery Services, Inc. (hereafter "ARSI") as Debt Collector for Respondent**

Respondent has admitted that ARSI is a debt collector who was hired by Respondent (see para. 8-9 of Respondent's Response). The arbitration agreement governing this matter (hereafter "Provision") expressly includes debt collectors as parties subject to any claim that may arise, as follows: "Claim" is defined therein as "any claim, dispute or controversy, between you and us& ". The Provision further states "you and us also includes& predecessors, successors, assigns, any purchaser of any accounts, all agents, & and representatives& , and other *persons referred to below in the definition of 'Claims.'*" (emphasis added, see pg 3 of Provision submitted by Claimant with his initial claim, and attached hereto as exhibit A). The Provision further defines

"Claims" to include "claims by or against any third party using or providing any product, service or benefit in connection with any account (including, but not limited to, credit bureaus, & *debt collectors and all of their agents, employees, directors and representatives*) if and only if, such third party is named as a co-party with you or us". (emphasis added, pg 3-4, Provision).

Based on this unambiguous language and the Respondent's own admittance that it has hired ARSI as a debt collector, Respondent has no grounds to object to the joinder of ARSI to this matter as a party respondent.

**2. Kevin J. Kiely, Esq. (hereafter "KJK") as Representative of Respondent**

Respondent has admitted that KJK is an attorney licensed to practice law in Massachusetts and was a representative of Respondent in this matter (para. 7, 9, Respondent's Response to Claimant's Notice of Claim). The arbitration Provision expressly includes representatives of the Respondent as parties subject to claims, when it states "you and us also includes& predecessors, successors, assigns, any purchaser of any accounts, *all agents*, & *and representatives*& " (emphasis added, pg 3, Provision). Further, to the extent that KJK is an agent of Respondent, agents are also expressly included.

The plain language in the Provision expressly including representatives and agents, and the Respondent's admittance that KJK represented Respondent in this matter, make the joinder of KJK to this matter elementary and therefore undisputable.

**3. Kurt Sipmann (hereafter "Sipmann") as Employee, Agent or Representative of Respondent**

Sipmann submitted testimony, as an employee, agent or otherwise representative of Respondent, admitting personal knowledge of accounts alleged to be the Claimant's (para. 1-3, Sipmann's Affidavit attached hereto as Exhibit B (hereafter "Affidavit-1")). In addition to the aforementioned inclusion of agents and representatives, the arbitration Provision also includes "employees" of the Respondent or "employees" of the Respondent's debt collectors, successors,

predecessors or assigns (see pg 3-4 of Provision). Even if Sipmann erroneously declared himself as employee of Respondent, he would undoubtedly fall under one of the other designations broadly stated in the Provision, especially in light of his claim of intimate knowledge of the Respondent's policies and procedures (para. 2-3, Affidavit-1).

Sipmann's declaration that he is an employee of Respondent, and the Provision's express inclusion of employees as liable parties, unequivocally qualify Sipmann as a party respondent to this matter.

**4. Walter Gibbs (hereafter "Gibbs") as Agent, Representative or Employee of Respondent**

Gibbs submitted testimony, as an agent, representative or employee of Respondent, claiming knowledge of accounts alleged to be the Claimant's (para. 2, Gibb's Affidavit attached hereto as Exhibit C (hereafter "Affidavit-2")). As employee, agent or representative declaring knowledge and supervision of the alleged accounts, Gibbs clearly qualifies as a party respondent to this matter, in accordance with the Provision.

**5. ARSI, KJK, Sippman and Gibbs as Parties Qualified Under Other Designations**

Based on its broad language, the intent of the Provision is to include any and all persons associated with any account, account agreement or relationship thereof. Even if, assuming arguendo to the contrary, that the identified parties did not fall under the designations declared herein, they could fall under alternative designations stated in the Provision. For instance, in addition to, or alternative to, ARSI being a debt collector, it could be an agent, successor or representative of Respondent. Likewise, KJK, Sippman and/or Gibbs could qualify as agents and/or representatives of debt collector ARSI. Further assuming arguendo to the contrary, that the parties do not fall under any of the named designations within the Provision, it is clear that each of the party's involvement in this matter is sufficiently intimate to qualify as a liable party, as intended by the Provision. For instance, whether or not Sipmann or Gibbs carries the official

title of agent, employee or representative of Respondent, their role in testifying to having

intimate knowledge of Respondent's account records sufficiently qualifies each of them as a

related and interested party under the Provision.

**6. Claimant Reserves Right to Join Other Parties as They are Identified**

Due to the number of related parties typically involved in the collection of a credit account, it

may be determined that other parties, not yet named, are liable for damages arising from

Claimant's claims. For instance, other debt collectors (and their agents, etc& ) who were in the

chain of assignment/succession of the alleged account(s); or the credit reporting bureaus. It

would be premature to join additional parties at this juncture. The Claimant therefore reserves his

right to join additional parties to his claims, as their liability is identified and/or determined.

## II.   POINTS AND AUTHORITIES

**1. Joinder of Parties is Determined and Governed by the Arbitration Provision**

An arbitrator shall decide whether an arbitration agreement requires non-signatory parties to

arbitrate. See Contec Corporation v. Remote Solutions, 398 F.3d 205, 210 (2d Cir. 2005) (citing

Apollo Computer, Inc. v. Berg, 886 F.2d 469 (1st Cir.1989)). Who is actually bound by an

arbitration agreement is a function of the intent of the parties, as expressed in the terms of the

agreement. See Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 528 (5th Cir.2000).

The arbitration Provision expressly defines which parties shall be bound to arbitrate by

stating the following under the section titled *Definitions*: "For purposes of this Arbitration

Provision, 'you' and 'us' also includes& ". The statement then proceeds to list the party

designations, several of which have already been referenced herein (see para. I herein). The list is

lengthy and begins by including directly related parties such as employees or subsidiaries. The

list then refers to third parties such as debt collectors or credit bureaus. It is important to note that

the list of third parties is preceded by the phrase "including, but not limited to". Thus, any other

unlisted party that used or provided "any product, service or benefit in connection with any account", would also be bound to arbitrate any claim it is connected to (pg 3-4, Provision).

This entire list of parties is preceded by the words "you and us also includes& ." This language essentially makes a party from the list who is connected to a claim, to be an extension of the Respondent or Claimant. Therefore, any of the parties listed could be included in a claim without requiring true "joinder" in the typical case, where an independent party outside of the proceeding is being joined. This language in the Provision carries clear intent to bind all non-signatory parties and have each them bear the burden of liability for claims they are connected to.

**2. Non-Signatory Parties Expressly Included in an Arbitration Agreement Must Join Arbitration**

The Provision goes to great lengths to expressly stipulate the parties that shall be subject to arbitration in this matter. Consequently, it is the terms of the agreement that dictate who is actually bound by an arbitration agreement. <u>Sherer v. Green Tree Servicing</u>, LLC., 548 F.3d 379, 382 (5th Cir. 2008). Only when a non-signatory party is not expressly included in an arbitration agreement, should other theories, such as equitable estoppel, be considered to determine whether that party is subject to arbitration. See <u>*Id*</u>. Also see <u>Blinco v. Green Tree Servicing LLC</u>, 400 F.3d 1308 (11th Cir. 2005). In this instant case, it is not necessary to consider any other theory because the parties identified for joinder are expressly included in the Provision.

In <u>Sherer</u>, the court ordered the non-signatory party, Green Tree Servicing, to arbitrate based on the arbitration language stating that any claims are subject to arbitration that arise from "the relationships which result from the agreement." The relationship between Sherer and Green Tree, a non-signatory servicer of Sherer's loan, was established as a result of the loan agreement. Therefore, Green Tree was subject to arbitration.

This instant case is similar to the Sherer case. The governing arbitration Provision in this instant case states the following: "Claim means any& dispute&  between you and us arising from or relating to your Account, this Agreement, & and any other related or prior agreement that you may have had with us, *or the relationships resulting from any of the above agreements*" (emphasis added, pg 3, Provision). As in Sherer, the parties identified herein are subject to arbitration because the Provision stipulates that claims arising from the relationships resulting from the agreement(s) are subject to arbitration.

Further, the basis for joining the parties to arbitration in this instant case is more established than in the Sherer case. In this case, there is additional language within the Provision that specifically, yet broadly, calls out parties that fall under several different designations. Therefore, the aforementioned language that includes claims arising out of relationships from the agreement does not need to be solely relied upon to join the parties identified herein. For instance, the Respondent has admitted that ARSI was hired as a debt collector and that KJK was a representative (para I herein). The agreement expressly identifies those party designations as being subject to arbitral claims (para. I herein). ARSI and KJK therefore qualify for joinder based on those facts. Likewise with Sipmann and Gibbs, who are self-declared employees, agents or representatives of Respondent, with personal knowledge of the account(s) alleged (para. I herein).

### 3. Non-Signatory Parties Not Expressly Included in an Arbitration Agreement Must also Join Arbitration When Certain Conditions are Met

Even if any of the identified parties herein somehow fell outside of the Provision's express designations, the parties would be subject to arbitration based on other legal premises: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.". See Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F3d 125, 129 (2d Cir. 2003) When non-signatories are not expressly included in the arbitration agreement, other theories are

considered to determine whether a nonsignatory should be compelled to arbitration. "Ordinary principles of contract and agency law may be called upon to bind a nonsignatory to an agreement whose terms have not clearly done so". See Bridas S.A.P.I.C. v. Gov't of Turkmenistan, 345 F.3d 347, 355, 358 (5th Cir. 2003).

Courts have concluded that broad arbitration provisions, such as the one in this instant case, include claims of unfair debt collection practices by related parties, third parties and debt collectors. See Wilson v. Cash America Int'l, Inc., No. 4:11-CV-421-A, 2012 WL 310936, at *4 (N.D. Tex. Feb 1, 2012). An agency relationship may be demonstrated by "written or spoken words or conduct, by the principal, communicated either to the agent (actual authority) or to the third party (apparent authority)." Hester Int'l Corp. v. Federal Republic of Nigeria, 879 F.2d 170, 176 (5th Cir.1989). Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements. See, Arnold v. Arnold Corp., 920 F.2d 1269, 1281-82 (6th Cir.1990); Letizia v. Prudential Bache Securities, 802 F.2d 1185, 1187-88 (9th Cir.1986).

Arbitration agreements may be upheld against non-parties where the interests of such parties are directly related to, if not congruent with, those of a signatory. Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110 (3d Cir.1993) (holding that all claims, including statutory violations, are subject to arbitration). A respondent can be subject to arbitration notwithstanding the fact that they are not a signatory to a contract with an arbitration clause if that respondent is a beneficiary of such contract. See Raffa Associates, Inc. v. Boca Raton Resort & Club, 616 So. 2d 1096, 1097 (Fla. 4th D.C.A. 1993). A non-signatory to an arbitration agreement may still be bound by the agreement when the "signatory raises allegations of& substantially interdependent and concerted misconduct by both the non-signatory and one or

more of the signatories to the contract." <u>MS Dealer Serv. Corp. v. Franklin</u>, 177 F.3d 942, 947 (11th Cir. 1999).

The foregoing legal authority requires that in lieu of the express inclusion of the parties within the Provision, the parties would still be bound to join arbitration; unless each party can clearly show that it is not a related third party of the Respondent, or a debt collector, beneficiary, agent, representative, or employee thereof, or otherwise an interested party to the alleged account and/or agreement thereof. However, this determination should not be necessary because of the Provision's unambiguous and all-encompassing inclusion of the parties.

**4. Arbitration Language is Consistent Across Different Agreements Issued by Respondent**

Respondent has attempted to introduce a different arbitration agreement than the one attached by Claimant. Claimant maintains that the agreement he attached is the governing agreement. However, despite the agreements being different, the language that pertains to the joinder of parties, reference herein, is generally the same. Therefore, the determination of whether the parties should be joined, should not be affected by the contending agreements.

### III.   CONCLUSION

WHEREFORE, based on the foregoing, the Claimant respectfully requests that the identified parties herein be joined as party respondents to this arbitration case, and that Claimant's rights are preserved to join other parties as they become identified and/or determined.

Respectfully Submitted,

Dated: July 21st, 2014

JOHN CANTY

By his attorney,

Jonathan A. Carnes, Esq. (BBO# 685736)
THE LAW OFFICES OF
JONATHAN A. CARNES

P.O. Box 51438
Boston, MA 02205
Tel: (339) 234-1010
Email: jonathanacarnes@gmail.com


## CERTIFICATE OF SERVICE

I, Jonathan A. Carnes, attorney for the Claimant, hereby certify that on this day, a true

copy of the above, attached document was served upon attorney of record for the Respondent,

and to Kevin J. Kiely of Kiely & Ferrante, LLC, by email and in accordance with the

Massachusetts Rules of Civil Procedure, by first class mail.


Dated: July 21st, 2014

_Jonathan A. Carnes_
Jonathan A. Carnes, Esq. (BBO# 685736)
THE LAW OFFICES OF
JONATHAN A. CARNES
P.O. Box 51438
Boston, MA 02205
Tel: (339) 234-1010
Email: jonathanacarnes@gmail.com

EXHIBIT C

# KIELY & FERRANTE, LLC

*A Limited Liability Company*
**ATTORNEYS AT LAW**

Kevin J. Kiely, Esq.
**kjk@oldharborlaw.com**

August 21, 2014

John Joseph Carr
JAMS
One Beacon Street, Suite 2210
Boston, MA 02108
JCarr@jamsadr.com

### RE: **American Express Bank FSB/John Canty**
**Reference No: 1400014758**

Dear Sir/Madam:

Enclosed for filing with respect to the above referenced matter please find the following documents:

1. Objection of Kevin J. Kiely to the Claimant's Motion For Joinder of Party Respondents To Claimant's Notice Of Claim; and
2. Certificate of Service.

Regards,

Kevin J. Kiely

KJK/mt

NOTICE OF CLAIMS
JAMS RESOLUTION CENTER
BOSTON, MA

DOCKET NO. 1400014758

JOHN CANTY,                )
      Claimant          )
                      )
v.                            )
                      )
AMERICAN EXPRESS BANK FSB   )
(and related parties and co-parties),   )
      Respondent.      )

## KEVIN J. KIELY, ESQ. OPPOSITION TO CLAIMANT JOHN CANTY'S MOTION FOR JOINDER TO CLAIMANT'S NOTICE OF CLAIM

Kevin J. Kiely, Esq. (hereinafter "KJK") respectfully requests that the claimant be denied his request to join KJK as a party respondent to the claimant's notice of claim.

### Background

This demand for arbitration arose out of a claim by the Respondent's set forth in a suit filed in the Dudley District Court alleging monies owed pursuant to a line of credit established by the respondent and allegedly benefitting the claimant. A complaint was filed, which was later amended, and a Motion to Dismiss was filed by the defendant but never marked up or acted on by the court. No discovery was done. The case was then stayed by the claimants seeking arbitration. Prior to suit being filed, a mail demand for payment was made, the defendant requested a validation of the debt, and the debt was

validated by the Respondent. The claim was placed with KJK by the respondent on

October 22, 2012.

However, this was not the only dispute between the parties.

Prior to that action, suit was filed by the respondent against the claimant in the Worcester

Superior Court (2011-1435) alleging amounts due under a credit card agreement, and

went to jury trial. Less than two hours out, the jury returned a verdict for the respondent.

Attached is a copy of the answer and affirmative defenses raised by the claimant. To the

extents that any issues were raised in that forum, or could have been  raised as

compulsory counterclaims, they cannot now be raised in this arbitration as they are res

judicata.

### Jurisdiction

KJK specifically rejects that the arbitrator has jurisdiction to decide whether KJK,

undisputedly a nonsignatory to the arbitration agreement, can be compelled to arbitrate.

As a resident of Massachusetts, KJK argues that whether or not he is to be compelled to

arbitrate is governed by Massachusetts law. The Massachusetts Appeals Court had a

recent opportunity to visit many of the issues cited by the claimant in <u>Charles G. Walker</u>

<u>v. Jennifer Collyer, administratrix, and others</u> Massachusetts Appeals Court 12-P-1898

(2014) That case involved a medical doctor treating at a nursing home whose patient later

died, and the patient's estate wished to compel the doctor, a nonsignatory, to arbitrate

malpractice claims through the arbitration clause in the contract between the nursing

home and the patient. "The question whether Walker is bound by the arbitration

agreement between Collye and The Oaks is a "Gateway dispute" that was an issue for the

court, not the arbitrator, to decide in the first instance." Citing <u>Massachusetts Hy. Dept. v.</u>

Perini Corp. 444 Mass. 366, 375-376 (2005), First Options of Chicago, Inc. v. Kaplan,

514 U.S. 938, 944 (1955) "Where, as here, a party "attacks the very existence of an

agreement, as opposed to its continued validity or enforcement," a court must resolve the

question of arbitrability." Citing DK Joint Venture 1 v. Weyland, 649 F. 3d 310, 317 (5th

Cir. 2011) "While the agreement goes on to discuss the wide array of parties to which it

applies, we cannot say that this clause clearly and unmistakably shows that the parties to

this dispute – Walker and Collyer, rather than The Oaks and Collyer -agreed to arbitrate

questions about arbitrability. Because Walker did not "personally (sign the agreement) it

certainly follows that there is no "clear and unmistakable" evidence that (he) intended to

delegate questions of arbitrability to the arbitrator." Citing DK Joint Venture1, 649F. 3d

at 317 n.9 and PaineWebber Inc. v. Elahi, 87 F. 3d 589, 599 (1st Cir. 1996) ("certainly a

party who did not sign the agreement did not consider who should decide arbitrability")

Based on jurisdiction alone, the arbitrator must find that he cannot decide whether KJK

can be joined. KJK specifically reserves the right to seek redress in the Superior Courts of

the Commonwealth of Massachusetts regarding this issue, and his response to the

Claimant's motion should not be interpreted as assent to have these issues decided by the

arbiter rather than the courts of the Commonwealth.


## Failure to Effect Proper Service

While KJK was not a party to the preliminary hearing, it is his understanding that the

scheduling Order mandated that the Motion to Join Additional Parties "shall be filed by

July 21, 2014" and that "Claimant's counsel must serve this motion to join additional

parties, on any and all additional parties … by Certified Mail" While the order is silent as

to date required to make service, presumably, the parties and the arbitrator required

service to be made at the time of the filing of the motion to allow the potential parties

notice and opportunity to respond. In fact, service on KJK was not made until August 5,

2014, more than two weeks after the motion was filed. There has been no showing that

"all parties he seeks to join" have been served. The order goes on to say, that "All

deadlines shall be strictly enforced."

### Eligibility of Canty to Arbitrate

The Claimant's response to the Respondent's Validation of Debt is attached, wherein the

Claimant, John Canty (hereinafter "Canty") alleges that he is not the person responsible

for the American Express Bank, FSB (hereinafter "Amex") account in question, alleging

another party responsible and a possible ID theft. It logically follows that he cannot take

advantage of the arbitration clause inserted into an agreement that Canty claims he never

applied for, received, nor took advantage of. Canty may not have his cake and eat it too.

### Canty's Notice of Claims and Demand for Arbitration

Canty's claim contains fifteen counts. They are all echos of the same defenses set forth in

Canty in the Worcester Superior Court case in which a jury verdict was returned for

Amex. In that case, as in this one, Canty denied that he was the proper party, claimed that

Amex was not the owner of the claim, claimed improper debt validation, claimed false

statements, etc.  While Canty has appealed, the jury's finding of facts cannot be changed

and they found all of the facts as alleged here to not be credible. Canty has sought to add

additional non signatory parties to this arbitration in an attempt to harass and cause

unnecessary expense to KJK and others, and to relitigate issues that have already been

decided.

**Canty's Motion for Joinder**

**1.) The Respondent Kevin J. Kiely, Esq. Is Not A "Qualified Party" Necessary To Join For Just Adjudication.**

Canty sets forth no reason why just adjudication requires any other parties than Canty and

Amex. Amex has made absolutely no claim that any alleged action that was done by any

of the parties sought to be joined is somehow not imputed to them. Absent that, any

finding and award of damage for any actions taken by the parties sought to be joined,

would be against Amex.

**2.) KJK As A Non-Signatory Party Should Not Be Included In The Arbitration Agreement.**

While KJK represented Amex  in the law suit filed against the claimant, that simple fact

is insufficient to make him subject to the arbitration provision of the card member

agreement. The plain language of the applicable provision of the arbitration expressly

includes "corporate parents, wholly or majority-owned subsidiaries, affiliates, any

licensees, predecessors, successors, assigns, any purchaser of any accounts, all agents, employees, directors and representatives". Despite the numerous examples of parties to be included in arbitration, there is absolutely no mention of the respondent's attorneys as being included in arbitration. Anticipating the objection that this clause is expansive rather than restrictive and lists those parties mentioned as mere examples, it is however clearly anticipated that attorneys would be involved in the resolution of disputes between the card member and the respondent and should have been an obvious inclusion in the arbitration clause if it was the intention of the respondent to include attorneys. (As a practical matter, it would have been impossible for the respondent to have any attorney do any work for them if they anticipated their possible inclusion in arbitration.)  The claimant seeks to bring in attorneys by suggesting that they are somehow mere agents and representatives, failing to recognize the unique status, role and position of an attorney in representing a client. The plain language of the provision does not broadly include everyone. The claimant seeks to make KJK something other than he is. In all dealings with the claimant, KJK identified himself as the attorney for AMEX. It is significant that counsel for the claimant can cite absolutely no case whatsoever where an arbitration agreement that does not specifically mention an attorney was found to have included an attorney in an arbitration proceeding.

Further, there can be no inclusion of KJK due to the "relationships resulting from the above agreement" cited on page 6 of Canty's motion. That section of the arbitration is to assist in defining what a claim is, rather than who must be included in the arbitration of that claim. KJK had no "relationship" with Canty.

3.) **There are no "Conditions" Met Sufficient to Included KJK in the Arbitration.**

This last argument of Canty is so vague, it is almost impossible to respond. He correctly cites the legal premises for including  parties otherwise not includable, but then makes no allegation of facts to indicate which of those premises he is invoking. It is left to KJK to attempt to surmise what it is that Canty is alleging. The hitherto fore argument of alleged agency need not be covered again. There has been no allegation of any action taken by KJK that Amex seeks to avoid responsibility for. The agency exception refers to the binding of a principal to arbitrate by virtue of the actions of an agent, not the other way around. See A/S Custodia v. Lessin Intl., Inc. 503 F.2nd 318, 320 (2nd Cir. 1974) There has been no allegation of how KJK is a beneficiary of the contract between the parties. The claimant suggests that the equitable argument to include KJK as a non-signatory is based upon the relationships that result from the card member agreement or the card member account. KJK was not a party to the account or to the agreement and his involvement was limited to the representation of the respondent. The claimant suggests that KJK is somehow a representative and claims that the agreement identifies representatives as being included for arbitration. In fact, the agreement references representatives of "any of the foregoing" and the foregoing specifically lists "corporate parents, wholly or majority-owned subsidiaries, affiliates, any licensees, predecessors, successors, assigns, any purchaser of any accounts, all agents, employees, directors." KJK is none of those.

WHEREFORE, based on the foregoing, KJK respectfully requests that he not be joined as a party respondent to this arbitration case.

Kevin L. Kiely, Esq.
KIELY & FERRANTE, LLC
4 Parker Street
Gloucester, MA  01930
(978) 283-7700
BBO # 542043

ameresp_canty

John Canty
17 Riverside Dr.
Webster, MA 01570

November 30th, 2012

Kiely and Ferrante
Kevin Kiely
4 Parker St.
Gloucester, MA  01930

RE: Insufficient Validation of Alleged Debt

The documentation provided to validate the alleged account ending in 1003 does not satisfy
the debt validation requirements set forth in the Massachusetts debt collection regulations.
Your explanation referenced the FDCPA, but your claim is also regulated by Massachusetts
debt collection laws. The regulations supplement the FDCPA and clearly define the debt
validation requirements to include specific documentation pertaining to the alleged account.

I've never received or used the alleged credit card, and have never been associated with the
company listed on the alleged account statement. I was once employed by a company that
had changed its name several times due to acquisitions. However, that company went from
being named Maker Communications to Conexant Systems and then became Mindspeed
Technologies; but it has never taken on the name Online Sat Comm Inc.

Any association of my personal information to the alleged account must be caused by either
mistaken identity or identity theft. In the past several years, both my self and my wife have
had our personal property stolen which included our personal identification information.

You must abide by the Massachusetts debt validation requirements and provide at minimum,
a copy of any documentation associated with the alleged account that contains a signature
(see 940 CMR 7.08). This will allow for the necessary clarification in this matter and further
investigation as necessary.

Sincerely,


John Canty

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                                     SUPERIOR COURT
                                                  CIVIL ACTION NO.: 11-1435A

AMERICAN EXPRESS BANK, FSB,
        Plaintiff,

        v.

JOHN CANTY,
        Defendant.

## DEFENDANT'S AMENDED ANSWER TO PLAINTIFF'S COMPLAINT AND CLAIM OF TRIAL BY JURY

Defendant, by and through his attorney, answering the complaint of Plaintiff, upon information and belief, respectfully shows to this Court and alleges:

1.    That the Defendant denies the allegations in paragraph 1 of Plaintiff's Compliant. Defendant has no knowledge of Plaintiff's status as a bank or its principal place of business and demands strict proof thereof.

2.    Defendant admits to the allegations in paragraph 2.

3.    Defendant denies the allegations in paragraph 3. Defendant has never applied for, received or used the alleged credit card or extension of credit, has never signed or agreed to a contract with Plaintiff for the alleged account, and has never received any monthly statements, terms and conditions statement or any other form of agreement from the Plaintiff for the alleged account. Plaintiff has provided no proof to support the allegations

in this paragraph, no proof of any agreement for the alleged account and no proof of any charges allegedly made by Defendant.

4.   Defendant denies the allegations in paragraph 4. Defendant has never applied for, received or used the alleged credit card or extension of credit, has never signed or agreed to a contract with Plaintiff for the alleged account, and has never received any monthly statements, terms and conditions statement or any other form of agreement from the Plaintiff for the alleged account. Plaintiff has provided no proof to support the allegations in this paragraph, no proof of any agreement for the alleged account and no proof of any charges allegedly made by Defendant.

**FIRST AFFIRMATIVE DEFENSE**

5.   The complaint fails to invoke this Court's subject matter jurisdiction due to the Plaintiff's lack of legal standing to bring this instant action.

6.   The named Plaintiff in this matter is not the real party in interest, and is asserting the legal rights and interest of a third party. The Plaintiff does not own the alleged debt and/or does not possess the legal rights to receive any payments or amounts allegedly due or owed pursuant to the alleged credit card agreement.

7.   The Plaintiff is not in possession and/or control of the documents necessary to prove its standing in this lawsuit.

**SECOND AFFIRMATIVE DEFENSE**

8.   The complaint fails to invoke this Court's subject matter jurisdiction due to the Plaintiff's denial of the Defendant's due process rights.

9.   The Plaintiff has failed to satisfy a condition precedent and has denied the Defendant his due process rights by failing to issue the required initial notice of debt denying the

Defendant the option to request validation of the alleged debt before the filing of this lawsuit.

10.    The Plaintiff has failed to validate the alleged account and has not investigated Defendant's claim of identity theft and/or mistaken identity.

## THIRD AFFIRMATIVE DEFENSE

11.    The complaint fails to state a claim upon which relief can be granted.

12.    The Plaintiff is not in possession and/or control of the documents and/or witnesses necessary to prove its alleged claim.

## FOURTH AFFIRMATIVE DEFENSE

13.    Plaintiff's claim is barred, in whole or in part, by the doctrine of privity.

14.    The Defendant denies receiving any benefit from or having any connection to the alleged account and claims that he is a victim of identity theft and/or mistaken identity

15.    The Plaintiff has failed to name the proper defendant in this matter and has not addressed the Defendant's claim that he is a victim of identity theft and/or mistaken identity.

16.    The Plaintiff is not in possession of any documentary proof that the alleged credit card account was legally opened in the Defendant's name and/or used by the Defendant.

## FIFTH AFFIRMATIVE DEFENSE

17.    The alleged account is an invalid account that was not established in compliance with the federal Truth In Lending Act as stipulated by 15 U.S.C. § 1642 and 1637.

## SIXTH AFFIRMATIVE DEFENSE

18.    The Plaintiff and/or the Plaintiff's successor in interest did not pay fair and adequate consideration for the alleged debt and would therefore be unjustly enriched by receiving the relief requested.

19.   The Plaintiff has benefited by writing off the unpaid balance as a loss for tax and accounting purposes and it would therefore be inequitable for the Plaintiff to receive the relief requested.

20.   It would be inequitable for the Plaintiff to collect on the alleged debt after the Plaintiff charged off the debt and reported the unpaid balance as a loss for accounting purposes and received the tax benefit thereof.

### SEVENTH AFFIRMATIVE DEFENSE

21.   Plaintiff's claim is barred, in whole or in part, by the applicable statutes of limitations.

### EIGHTH AFFIRMATIVE DEFENSE

22.   Plaintiff's claim is barred, in whole or in part, by the applicable principles of estoppel, waiver, release, ratification, and/or latches.

### NINTH AFFIRMATIVE DEFENSE

23.   Plaintiff's claim is barred, in whole or in part, by the doctrine of Res Judicata.

### TENTH AFFIRMATIVE DEFENSE

24.   Plaintiff's claim is barred, in whole or in part, by the doctrine of unclean hands.

### ELEVENTH AFFIRMATIVE DEFENSE

25.   Plaintiff's claim is barred, in whole or in part, by the doctrines of Scienti et volenti non fit injuria (a person who knowledgeably consents to legal wrong has no legal right) and Damnum absque injuria (harm without injury).

### TWELFTH AFFIRMATIVE DEFENSE

26.   Plaintiff's claim is barred, in whole or in part, by the statute of Frauds.

### THIRTEENTH AFFIRMATIVE DEFENSE

35.   The Defendant has been victimized by Identity theft in prior instances and has reported the incidents to the credit bureau (Defendant's affidavit, para. 25).

36.   The Plaintiff has never provided an explanation as to how or why the Defendant's name has been associated to the alleged account when there is no proof that the alleged account was opened in the Defendant's name.

37.   The Plaintiff has provided no proof that it has complied with federal banking laws requiring proper verification of a credit card applicant's identity at the time the alleged account was opened.

38.   The Plaintiff has provided no proof that the alleged account is a valid account opened in compliance with federal banking law.

39.   The Plaintiff has submitted a purported account statement that actually proves the alleged account was not opened in the Defendant's name, but is a business account opened in the name of ONLINE SAT COMM INC, in which Defendant has no relationship to (Defendant's Affidavit, para. 7).

40.   The alleged account statement submitted by Plaintiff has not been authenticated by a competent fact witness (Defendant's Affidavit, para. 12-17).

41.   The Plaintiff has failed to provide a copy of the alleged credit card agreement or application signed by the Defendant, or any documentary proof showing that the Defendant agreed to and/or applied for the alleged account, or used the alleged card.

42.   Plaintiff has no legal standing to collect the alleged debt because the rights and interest to the alleged account have been transferred to American Recovery Services, Inc. (Def. Aff. para. 10-17, 20-24).

43. The named Plaintiff in this matter is not aware of and is not participating in this lawsuit and is being willfully misrepresented by the real party of interest and its agents and attorneys (Defendant's Affidavit, para. 10-17, 20-24).

44. The named Plaintiff in this matter is a third party to the proceedings and therefore all facts and pleadings presented in this matter is third party hearsay (Defendant's Affidavit, para. 10-17, 20-24).

45. Plaintiff's counsel misrepresented material facts by filing and litigating this complaint in the name of the Plaintiff as original creditor, when it has no rights to access and collect the alleged debt (Defendant's Affidavit, para. 10-17, 20-24).

46. Plaintiff's counsel has provided no proof of its relationship with Plaintiff and its authority to collect on behalf of American Express Bank, FSB (Def's Aff. para. 10-17, 20-24).

## PRAYER FOR RELIEF

**WHEREFORE,** based on the foregoing, Defendant respectfully requests this Honorable Court deny judgment on all counts and dismiss this case with prejudice, and award such other and further relief as the Court deems just and proper.

## JURY DEMAND

The Defendant demands a trial by jury on all claims so triable.

Respectfully Submitted,

Dated: 07/31/13                         JOHN CANTY

By his attorney,

Jonathan A. Carnes, Esq. (BBO# 685736)
THE LAW OFFICES OF JONATHAN A. CARNES

CERTIFICATE OF SERVICE

     I, Kevin J. Kiely, hereby certify that on this 21st day of August 2014, I caused a copy of the Objection of Kevin J. Kiely to the Claimant's Motion For Joinder of Party Respondents To Claimant's Notice Of Claim be mailed electronically and mailed, postage prepaid to the following:

          Jonathan A. Carnes, Esq.
          The Law Offices of Jonathan A. Carnes
          P.O. Box 51438
          Boston, MA 02205
          jonathanacarnes@gmail.com

          Kevin J. Kiely

EXHIBIT D

JAMS ARBITRATION NUMBER 1400014758

JOHN CANTY
   Claimant

v.

AMERICAN EXPRESS BANK, FSB
   Respondent

*DECISION OF THE ARBITRATOR ON THE CLAIMANT'S MOTION FOR
JOINDER OF PARTY RESPONDENTS TO CLAIMANT'S NOTICE OF CLAIM*

On August 7, 2014, the Claimant filed this Motion for Joinder.
Oppositions were filed by Respondent, AMEX, and by one of the
parties, Kevin J. Kiely, Esq., whom Claimant seeks to join.  A hearing
with counsels for Claimant and for Respondent as well as Attorney Kiely
participating  was held on September 5, 2014 by telephone conference
call. After considering the oral arguments and reading the briefs, the
Motion for Joinder is allowed as to Attorney Kevin J. Kiely and American
Recovery Services, Inc. ("ARSI") and denied as to Kurt Sippman and
Walter Gibbs, as Gibbs is deceased.

First and foremost, as my related decision on the Claimant's Notice of
Clarification and Request for Correction also issued today states, this
arbitration shall be governed by the arbitration provisions and related
documents for an AMEX Business Capital Line Premium Agreement
ending in 1003 (or 2-71003) in the name of John Canty/OnLine Sat
Comm Inc.

Second,  the Claimant's Notice of Claims and Demand for Arbitration,
dated May 14, 2014, adequately pleads and the Respondent's Answer
and Counterclaim, dated May 28, 2014, admits  that ARSI is a collection

agency hired by Respondent and that Respondent was represented by Attorney Kiely in this matter (i.e. including the initial litigation seeking to enforce Claimant's alleged obligation pursuant to AMEX account ending in 1003 initiated by Attorney Kiely in the Dudley District Court in late 2012). For confirmation of Attorney Kiely's role in the Dudley District Court case of AMEX Bank v. John Canty, see his letter of January 28, 2014 to the Clerk of the Dudley District Court assenting to Canty's motion to compel private arbitration and stay court proceedings. His assent ultimately led to this pending Arbitration at JAMS for the same dispute.

Third, Claimant's pleadings and Respondent's Answer and Counterclaim state a sufficient role for ARSI and Attorney Kiely to bring each within the scope of those entities and parties subject to the arbitration provisions found in the documents for the AMEX Business Capital Line Premium Agreement ending in 1003. That text states, "... the term "Claim" means any claim, dispute, or controversy between you and us arising from or related to your Account,..." The text goes to state, "you" and "us" also includes,...all agents, employees,...and other persons referred to below in the definition of "Claims". "'Claim' also included claims by or against any third party,...(including, but not limited to...debt service collectors and all of their agents,...)". Finally, the text states, "The term 'Claim' is to be given the broadest possible meaning,...".

Furthermore, the arbitration provisions included in the AMEX documents which the Claimant seeks to apply to this Arbitration by way of his Notice of Clarification and Request for Correction contain similar language which would also authorize the joinder of ARSI and Attorney

Kiely to this pending Arbitration.  See Exhibit A to Claimant's Motion for Joinder of Party Respondents to Claimant's Notice of Claim.

Finally, there is settled case law holding that nonsignatories to a valid arbitration agreement, as exists here, can be bound as agents of a signatory principal if their role as agent of the principal is adequately pleaded and/or admitted.  "Where the parties to [a valid arbitration] clause unmistakably intend to arbitrate all controversies which might arise between them, their agreement should be applied to claims against agents or entities related to signatories".  Pritzker v. Merrill Lynch, 7 F 3rd at 1121-1122 (3rd Cir.1993).  The role of ARSI and Attorney Kiely in the efforts of AMEX to enforce the Business Capitol Line Premium Agreement against Claimant John Canty in the Dudley District Court is sufficiently pleaded and admitted by AMEX.  As agents of AMEX prior to and during the Dudley District Court litigation, the conduct of these two parties in the overall AMEX effort to enforce its rights against Claimant regarding an account in Canty's name ending in 1003 is therefore open for inquiry during this Arbitration.

With regard to Claimant's motion for joinder of Kurt Sippman to this Arbitration, neither Claimant's Notice of Claims and Demand for Arbitration nor Respondent's Answer and Counterclaim provide the required allegation or admission about Sippman's role in the AMEX effort to enforce its rights against Claimant regarding Canty's alleged obligations for a Business Capitol Line Premium Agreement ending in 1003. None of the other documents provided to the Arbitrator suggest or allege a link to Sippman regarding the AMEX account ending in 1003. As agreed during our telephone conference call, Walter Gibbs is deceased.

On several occasions Attorney Kiley objected by email to what he
considered Claimant's counsel's late filing of Claimant's Reply to
Respondent's and Kevin J. Kiely's Oppositions to Claimant's Motion for
Joinder of Party Respondents. In fact, Attorney Carnes filed Claimant's
Reply by email at 5:09 pm on Monday, September 8th, just at the
deadline set forth in Scheduling Order No. 3. I find no reason to reject
this Reply with its arrival being "by the close of business". The
documents accompanying this Reply did not arrive until later in the
week of September 8th accompanied by an email explanation from
Attorney Carnes about "technical issues". I have reviewed these
documents and state that none of them has played a role in my
decision to allow Claimant's Motion for Joinder limited to the two
parties named in Claimant's pleadings and Respondent's Answer and
Counterclaim, namely ARSI and Attorney Kevin J. Kiely.

For all the reasons set forth herein, the Claimant's Motion for Joinder of
Party Respondents to Claimant's Notice of Claim is ALLOWED as to
American Recovery Services, Inc. ("ARSI") and Kevin J. Kiely, Esq. and
DENIED as to Kurt Sippman and Walter Gibbs.

The timing for ARSI and Attorney Kiley to file Answers and/or
Counterclaims shall be discussed at the next conference call scheduled
for Monday, September 29th at 11AM.

September 22, 2014                    _____/s/_____

                                      Hon. John C. Cratsley (Retired),
                                      Arbitrator



THE RESOLUTION EXPERTS℠

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Canty, John / American Express Bank, FSB
Reference No. 1400014758

I, John J. Carr, not a party to the within action, hereby declare that on September 22, 2014 I

served the attached *DECISION OF THE ARBITRATOR ON THE CLAIMANT'S NOTICE OF*

*CLARIFICATION AND REQUEST FOR CORRECTION TO THE JAMS' REPORT OF PRELIMINARY*

*HEARING AND SCHEDULING ORDER NO. 1* and *DECISION OF THE ARBITRATOR ON THE*

*CLAIMANT'S MOTION FOR JOINDER OF PARTY RESPONDENTS TO CLAIMANT'S NOTICE OF*

*CLAIM* on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed

envelopes with postage thereon fully prepaid, in the United States Mail, at Boston, MASSACHUSETTS,

addressed as follows:

Jonathan A. Carnes Esq.
L/O Jonathan A. Carnes
P.O. Box 51438
Boston, MA  02205
Tel: 339-234-1010
Email: jonathanacarnes@gmail.com
  Parties Represented:
  John Canty

Kevin J. Kiely Esq.
Kiely & Ferrente
4 Parker Street
Gloucester, MA  01930
Tel: 978-283-7700
Email: kjk@oldharborlaw.com
  Parties Represented:
  American Express Bank, FSB

Randall L. Pratt Esq.
Timothy P. McKivergan Esq.
L/O Randall L. Pratt
One Cate Street
Portsmouth, NH  03801
Tel: 603-430-2888
Email: rpratt@prattlawpc.com
timm@prattlawpc.com
  Parties Represented:
  American Express Bank, FSB

I declare under penalty of perjury the foregoing to be true and correct. Executed at Boston,
MASSACHUSETTS on September 22, 2014.

John J. Carr
jcarr@jamsadr.com

EXHIBIT E

# KIELY & FERRANTE, LLC

*A Limited Liability Company*
**ATTORNEYS AT LAW**

**Kevin J. Kiely, Esq.**
kjk@oldharborlaw.com

January 6, 2015

Clerk – Civil
Dudley District Court
100 West Main Street
P.O. Box 100
Dudley, MA 01571-0100

Re:  American Express Bank FSB
Vs:  John Canty

Docket No. 1264 CV 000671

Dear Clerk:

Regarding the defendant's motion to compel private arbitration and dismiss plaintiff's claim or in the alternative to state proceeding pending arbitration, the plaintiff will assent to proceedings being stayed pending completion of the arbitration.

Very truly yours,

Kevin J. Kiely

cc:  Jonathan A. Carnes, Esq.
KJK/tef
amelet_canty

EXHIBIT F

JAMS ARBITRTATION CASE REFERENCE NO. 1400014758

JOHN CANTY,

     Claimant

V.

AMERICAN EXPRESS BANK, FSB, et al,

     Respondents

*SCHEDULING ORDER NO. 7*

Following a telephone conference call on December 22, 2014, with Claimant, John Canty, Attorney Randall Pratt for AMEX, and Attorney Damian LaPlaca for Attorney Kevin Kiley, I hereby issue this new Scheduling Order No. 7:

(1)     With respect to Claimant's recently filed Amended Notice of Claims and Demand for Arbitration as well as Claimant's recently filed Motion for Judicial Notice, counsel for one or both Respondents shall file their Oppositions/Replies by Monday, January 12, 2015.

(2)     Counsel for Respondent Kevin Kiley shall file any petition/motion for judicial review of the Arbitrator's decision to join Attorney Kevin Kiley in this Arbitration, with copies to all parties and the Arbitrator, by Monday, January 12, 2015. Should Counsel for Respondent Kevin Kiley seek a stay of this Arbitration in association with the petition/motion for judicial review, this request shall also be filed, with copies to all parties and the Arbitrator, by Monday, January 12, 2015.

(3)     Claimant's response, if any, to the filings of Respondents referenced in (1) and (2) above, shall be filed by Tuesday, January 20, 2015.

(4)     A telephone conference call will be held on Tuesday, January 27, 2015 at 11am to hear oral argument on the pleadings, motions, oppositions, replies, etc. filed pursuant to (1), (2) and (3) above.

(5)     The telephone conference call scheduled for Tuesday, January 6th, 2015 is cancelled, and the response date for Respondents of December 22, 2014, as set forth In Scheduling Order No. 6, is amended to January 12, 2015 as set forth above.

December 23, 2013                  _____/s/_____

                                  Honorable John C. Cratsley (Retired), Arbitrator

EXHIBIT G

85 Mass.App.Ct. 311
Appeals Court of Massachusetts,
Suffolk.
Charles G. WALKER

v.

Jennifer COLLYER, administratrix,[1] & others.[2]
No. 12–P–1898. | Submitted Sept. 13, 2013. |
Decided May 23, 2014.

**Synopsis**
**Background:** After patient's widow brought arbitration
proceeding, individually and as administrator of patient's
estate, against physician, and facility at which physician
was an attending, alleging medical malpractice, physician
brought action challenging arbitrator's order that he
participate in arbitration of claim. The Superior Court
Department, Suffolk County, Carol S. Ball, J., entered
judgment affirming arbitrator's decision ordering
physician to arbitrate. Physician appealed.

**Holdings:** The Appeals Court, Katzmann, J., held that:

[1] issue of whether physician was bound by arbitration
agreement between patient and facility was for court,
rather than arbitrator;

[2] as a matter of first impression, physician was not bound
by direct benefits estoppel to arbitrate; and

[3] physician could not be compelled to arbitrate on the
basis of agency exception.

Reversed and remanded.

West Headnotes (20)

[1]     **Alternative Dispute Resolution**
        ⇨Persons affected or bound

        Traditional principles of Massachusetts contract
        law determine whether nonsignatories to an
        arbitration agreement can be compelled to
        arbitrate.

Cases that cite this headnote

[2]     **Courts**
        ⇨Validity and construction of Constitutions and
        statutes of other states

        Because Massachusetts Arbitration Act is an
        enactment of the Uniform Arbitration Act, it is
        appropriate to give strong weight to decisions in
        other jurisdictions. M.G.L.A. 251 § 1 et seq.

        Cases that cite this headnote

[3]     **Courts**
        ⇨Construction of federal Constitution, statutes,
        and treaties

        Because Massachusetts Arbitration Act is an
        enactment of the Uniform Arbitration Act,
        Appeals Court gives strong weight to decisions
        applying Federal Arbitration Act. 9 U.S.C.A. § 1
        et seq.; M.G.L.A. 251 § 1 et seq.

        Cases that cite this headnote

[4]     **Alternative Dispute Resolution**
        ⇨Matters to Be Determined by Court

        Issue of whether physician was bound by
        arbitration agreement between patient and
        nursing facility at which physician was an
        attending physician was a gateway dispute that
        was an issue for the court, rather than arbitrator,
        to decide, where physician attacked very
        existence of an agreement, as opposed to its
        continued validity or enforcement, and
        physician did not personally sign arbitration
        agreement, so there was no clear and
        unmistakable evidence that he intended to
        delegate questions of arbitrability to arbitrator.

        Cases that cite this headnote

Cases that cite this headnote

[5]     **Alternative Dispute Resolution**
        Evidence

Appeals Court requires clear and unmistakable evidence of intent to require parties to arbitrate question of arbitrability.

Cases that cite this headnote

[6]     **Alternative Dispute Resolution**
        Trial or hearing

When there is a dispute as to a material fact regarding whether there is an agreement to arbitrate, judge conducts an expedited evidentiary hearing on matter and then decides issue; when there is not such a dispute, judge resolves issue as a matter of law. M.G.L.A. c. 251, § 2(b).

Cases that cite this headnote

[7]     **Appeal and Error**
        Cases Triable in Appellate Court

Appeals court resolves matters of law de novo.

Cases that cite this headnote

[8]     **Alternative Dispute Resolution**
        Contractual or consensual basis
        **Alternative Dispute Resolution**
        Persons affected or bound

Absent advance consent to a contractual agreement, a party cannot be compelled to arbitrate a dispute, but the obligation to arbitrate is not limited to those who have signed an arbitration agreement.

[9]     **Alternative Dispute Resolution**
        Waiver or Estoppel

By knowingly exploiting an arbitration agreement, a party is estopped from avoiding arbitration despite having never signed the agreement.

Cases that cite this headnote

[10]    **Alternative Dispute Resolution**
        Waiver or Estoppel

The primary form of estoppel, direct benefits estoppel, allows a signatory to an arbitration agreement to compel to arbitration a nonsignatory party receiving a direct benefit from an arbitration agreement.

Cases that cite this headnote

[11]    **Alternative Dispute Resolution**
        Waiver or Estoppel

An alternative path to estoppel allows a nonsignatory to an arbitration agreement to compel a signatory to arbitrate when: (1) the nonsignatory has a close relationship with a signatory, and (2) the underlying issues for arbitration are intertwined with an agreement the estopped party has actually signed.

Cases that cite this headnote

[12]    **Alternative Dispute Resolution**
        Waiver or Estoppel

Physician, who was not a signatory to arbitration

agreement between facility at which he was an attending and patient, was not bound by direct benefits estoppel to arbitrate medical malpractice claim brought by patient's widow, where physician would have had opportunity to treat patient irrespective of whether patient signed arbitration agreement, physician was not even aware of arbitration agreement prior to instant case, and physician's possibility of being able to avail himself of arbitration agreement was a minimal indirect benefit that was not the sort of benefit which Appeals Court envisioned as basis for estopping a nonsignatory from avoiding arbitration.

Cases that cite this headnote

[13]     **Alternative Dispute Resolution**
         Waiver or Estoppel

For direct benefits estoppel, an entity knowingly exploiting an agreement with an arbitration clause can be estopped from avoiding arbitration despite having never signed the agreement.

Cases that cite this headnote

[14]     **Alternative Dispute Resolution**
         Waiver or Estoppel

For a non-signatory to be bound to arbitration agreement by direct benefits estoppel, the benefits must flow directly from the agreement.

Cases that cite this headnote

[15]     **Alternative Dispute Resolution**
         Waiver or Estoppel

Benefits of an arbitration agreement are indirect, and thus do not estop a non-signatory to arbitration agreement from avoiding arbitration, where nonsignatory exploits contractual relation of parties to an agreement, but does not exploit,

and thereby assume, the agreement itself.

Cases that cite this headnote

[16]     **Alternative Dispute Resolution**
         Waiver or Estoppel

Physician, who was not a signatory to arbitration agreement between facility at which he was an attending and patient, was not bound by forms of estoppel alternative to direct benefits estoppel to arbitrate medical malpractice claim brought by patient's widow; these forms of estoppel were limited the compulsion to arbitrate to signatories.

Cases that cite this headnote

[17]     **Alternative Dispute Resolution**
         Persons affected or bound

Physician, who was a non-signatory to arbitration agreement between patient and facility at which he was an attending physician, could not be compelled to arbitrate medical malpractice claim by patient's widow on the basis of agency exception to general rule that non-signatories cannot be compelled to arbitrate; exception only allowed agents to bind principals by their actions, rather than vice versa.

Cases that cite this headnote

[18]     **Alternative Dispute Resolution**
         Persons affected or bound

Agency is one of the well-established exceptions to the general rule that parties cannot be bound by an arbitration agreement they did not sign.

Cases that cite this headnote

9 N.E.3d 854

[19]   **Alternative Dispute Resolution**
🔑Persons affected or bound

Under ordinary principals of contract and agency law, an agency relationship itself is insufficient to compel a nonsignatory agent to arbitrate in accordance with an agreement signed by the principal.

Cases that cite this headnote

[20]   **Principal and Agent**
🔑Implied and Apparent Authority

Apparent authority allows a principal to be bound by actions of an agent based on written or spoken words or any other conduct of principal which, reasonably interpreted, causes third person to believe that principal consents to have the act done on his behalf. Restatement (Second) of Agency § 27.

1 Cases that cite this headnote

**Attorneys and Law Firms**

**856 Curtis R. Diedrich, Boston, for the plaintiff.

Scott D. Peterson, Foxborough, for Jennifer Collyer.

John J. Barter, Boston, for Professional Liability Foundation, Ltd., amicus curiae, submitted a brief.

Present: COHEN, KATZMANN, & AGNES, JJ.

**Opinion**

KATZMANN, J.

*312 Charles Walker, a physician, seeks to avoid being compelled to arbitrate a medical malpractice claim brought by the representative of a deceased patient, Karl Collyer. Walker treated Karl[1] at The Oaks Nursing Center (The Oaks or the facility), a facility at which Walker

practices medicine and serves as subacute rehabilitation (rehab) program medical director. Karl and the facility signed an arbitration agreement covering disputes arising from his treatment; Walker did not sign the agreement. In the Superior Court, Walker challenged an arbitrator's order compelling him to participate in an arbitration proceeding commenced pursuant to the agreement. He now appeals from the judgment entered in the Superior Court affirming the arbitrator's decision ordering Walker to arbitration. We conclude that the question whether Walker was bound by the arbitration agreement despite being a nonsignatory was a question for the court and not the arbitrator. **857 We further conclude, based upon the undisputed material facts, that Walker is not bound by the agreement.[1]

While our courts have determined that under some circumstances a party who did not sign an arbitration agreement can take advantage of an agreement signed by an allied party to compel a signatory to arbitrate, we have not decided the question in the converse that is posed by this case: Can a signatory *313 to an arbitration agreement compel a nonsignatory to arbitrate by virtue of the agreement that he has not signed? Other courts, particularly the Federal courts, have considered such situations, enumerating the circumstances in which a signatory can compel a nonsignatory to arbitrate. We find persuasive the framework laid out clearly by the Federal courts and hold that Collyer, as administratrix of Karl's estate, cannot compel Walker to arbitrate because Collyer has failed to show the type of relationship that would establish an exception to the elemental tenet that a party cannot be required to arbitrate if he or she has not agreed to do so. Accordingly, the judgment entered by the Superior Court cannot stand.

*Background.* 1. *Undisputed facts.* Karl entered The Oaks for rehabilitation following a hip replacement at another health facility. At the time of his admission, Karl and the facility entered into a "Voluntary Agreement for Arbitration" (arbitration agreement). Karl signed the agreement, as did a representative of the facility (not Walker) on behalf of The Oaks. Walker asserts (and Collyer does not dispute) that he was not aware of the existence of the provision until the filing of this medical malpractice claim against him. The agreement includes the following broad arbitration provision:

"The parties agree that they shall submit to binding arbitration all disputes against each other and their agents, affiliates, governing bodies and employees arising out of or in any way related or

connected to the Resident's stay and care provided at the Facility, including but not limited to any disputes concerning alleged personal injury to the Resident caused by improper or inadequate care, including allegations of medical malpractice; any disputes concerning whether any statutory provisions relating to the Resident's rights under Massachusetts law were violated; and any other dispute under Massachusetts or federal law based on contract, tort, or statute."

The agreement also broadly defines the scope of the parties that it covers:

"It is the intention of the Facility and the Resident that this Arbitration Agreement shall inure to the benefit of and *314 bind the Facility, its parents, affiliates, and subsidiary companies, owners, officers, directors, employees, successors, assigns, agents and insurers; and the Resident, his/her successors, assigns, agents, insurers, heirs, trustees, and representatives, including the personal representative or executor of his or her estate; and his/her successors, assigns, agents, insurers, heirs, trustees, and representatives."

Walker works at The Oaks both as an attending physician and as subacute rehab program medical director. Walker served as Karl's attending physician during his short stay at The Oaks. Walker conducted a physical examination of Karl the day after he was admitted to the facility and signed his admissions order. Walker also signed Karl's discharge order three days later. The record does not show additional **858 examinations or treatment between the initial examination and Karl's discharge.[5]

Walker's role as the subacute rehab program medical director was governed by an agreement (contract) signed on December 18, 2006.[6] The contract states that Walker will be an independent contractor to The Oaks—not an employee. The Oaks pays Walker directly for his performance of the duties of subacute rehab program medical director. By contrast, individual patients pay Walker for his work as an attending physician.

After receiving care in the facility for four days, Karl was discharged. He died less than three days later from bilateral pulmonary thromboemboli that had resulted from deep vein thrombosis (that is, blood clots that traveled to the lungs from elsewhere in the body).

2. *Procedural history.* On behalf of Karl's estate and on her own behalf, Collyer brought an arbitration proceeding against Walker, as well as The Oaks and its parent company. This appeal pertains only to Collyer's ability to compel Walker to resolve the dispute through arbitration.

*315 Walker claims that he is not bound by the arbitration agreement and thus cannot be compelled to arbitrate. After a hearing, the arbitrator determined, first, that he had the authority to determine whether the dispute was arbitrable as to Walker, and, second, that it was indeed arbitrable as to him.[7] Walker commenced an action in Superior Court seeking relief from the arbitrator's order pursuant to G.L. c. 251, § 2(b).[8] In his complaint, he sought (1) an order staying the arbitration pending the determination by the court whether he was a proper party to the arbitration, and (2) an order that he was not bound by the arbitration agreement. The Superior Court affirmed the arbitrator's decision requiring that Walker submit to the arbitration proceeding. Walker appeals.[9]

[1] *Analysis.* 1. *Governing law.* Because of the dearth of Massachusetts cases on point, we address first the governing law that we apply. Regardless whether the Massachusetts Arbitration Act, G.L. c. 251, §§ 1 et seq., or the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (2006), governs the underlying dispute (see, e.g., **859 *Feeney v. Dell Inc.,* 466 Mass. 1001, 993 N.E.2d 329 [2013] ), traditional principles of Massachusetts contract law determine whether nonsignatories can be compelled to arbitrate. See *Grand Wireless, Inc. v. Verizon Wireless, Inc.,* 748 F.3d 1, 12 & n.26 (1st Cir.2014), citing *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009). In applying Massachusetts *316 law, however, we note that the decisions of our courts have only comprehensively addressed the separate but related question whether a nonsignatory can take advantage of an arbitration agreement. See, e.g., *Constantino v. Frechette,* 73 Mass.App.Ct. 352, 897 N.E.2d 1262 (2008). See also *Miller v. Cotter,* 448 Mass. 671, 863 N.E.2d 537 (2007), discussed in *Constantino, supra* at 357 & n. 11, 897 N.E.2d 1262. We have not resolved the particular question at issue here: whether and in what circumstances a signatory can compel a nonsignatory to arbitrate by virtue of an agreement he has not signed.

Until the Supreme Judicial Court's recent decisions in *Johnson v. Kindred Healthcare, Inc.,* 466 Mass. 779, 2 N.E.3d 849 (2014) (*Johnson* ), and *Licata v. GGNSC Malden Dexter LLC,* 466 Mass. 793, 2 N.E.3d 840 (2014) ( *Licata* ), our courts had not been presented with the question whether a signatory can force a nonsignatory to arbitrate under Massachusetts law.[10] Because *Johnson* and *Licata,* in considering the particular circumstance of health care proxies, did not lay out the full range of ways to compel nonsignatories to arbitrate and ultimately did not need to address the issue before us, we look to other jurisdictions.[11]

[2] [3] Other courts, particularly the Federal courts, have considered such situations, enumerating the circumstances in which a signatory can compel a nonsignatory to arbitrate. See, e.g., *Thomson–CSF, S.A. v. American Arbitration Assn.,* 64 F.3d 773, 776 (2d Cir.1995) (*Thomson–CSF* ); *Bridas S.A.P.I.C. v. Government of Turkmenistan,* 345 F.3d 347, 356 (5th Cir.2003), cert. denied, 541 U.S. 937, 124 S.Ct. 1660, 158 L.Ed.2d 357 (2004) ( *Bridas* ). Because the Massachusetts Arbitration Act, at issue here, "is our enactment of the Uniform *317 Arbitration Act, it is appropriate to give strong weight to decisions in other jurisdictions." *O'Brien v. Hanover Ins. Co.,* 427 Mass. 194, 201, 692 N.E.2d 39 (1998). For the same reasons, we give similar weight to decisions applying the Federal Arbitration Act. See *Miller v. Cotter,* 448 Mass. at 679, 863 N.E.2d 537. Multiple Federal Circuit Courts of Appeals have addressed the question whether a signatory can compel a nonsignatory to arbitrate. We find these cases persuasive and adopt their approach here.

[4] [5] 2. *Who determines arbitrability and how.* The question whether Walker is **860 bound by the arbitration agreement between Collyer[12] and The Oaks is a "gateway dispute" that was an issue for the court, and not the arbitrator, to decide in the first instance. See *Massachusetts Hy. Dept. v. Perini Corp.,* 444 Mass. 366, 375–376, 828 N.E.2d 34 (2005), quoting from *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83–84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). We require clear and unmistakable evidence of intent in order to require the parties to arbitrate the question of arbitrability. See *Massachusetts Hy. Dept. v. Perini Corp.,* 83 Mass.App.Ct. 96, 100–101, 981 N.E.2d 721 (2013), citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Where, as here, a party "attacks the very existence of an agreement, as opposed to its continued validity or enforcement," a court must resolve the question of arbitrability. *DK Joint Venture 1 v. Weyand,* 649 F.3d 310, 317 (5th Cir.2011)

( *DK Joint Venture 1* ) (citation omitted).

Here, we do not have the requisite evidence of intent. The Oaks and Collyer clearly and unmistakably agreed to arbitrate disputes between them. The arbitration agreement states:

"By signing this agreement, the resident agrees with the Facility that any dispute regarding (1) any services ...; (2) any dispute arising out of the diagnosis, treatment, or care of the resident, including the scope of this arbitration clause; or (3) the *arbitrability of any claim or dispute,* against whomever made (including, to the full extent permitted by applicable law, third parties who are not signatories to this agreement) shall be resolved by binding arbitration by the National Arbitration Forum ..." (emphasis added).

*318 While the agreement goes on to discuss the wide array of parties to which it applies, we cannot say that this clause clearly and unmistakably shows that the parties to this dispute—Walker and Collyer, rather than The Oaks and Collyer—agreed to arbitrate questions about arbitrability. Because Walker did not "personally [sign the agreement], it certainly follows that there is no 'clear and unmistakable' evidence that [he] intended to delegate questions of arbitrability to the arbitrator." *DK Joint Venture 1,* 649 F.3d at 317 n. 9. See *PaineWebber Inc. v. Elahi,* 87 F.3d 589, 599 (1st Cir.1996) ("certainly a party who did not sign the agreement did not consider who should decide arbitrability"). We thus determine the issue "summarily."

[6] [7] 3. *Circumstances compelling arbitration.* "[T]he superior court may stay an arbitration proceeding commenced or threatened if it finds that there is no agreement to arbitrate." G.L. c. 251, § 2(*b* ). When there is a dispute as to a material fact, "the judge conducts an expedited evidentiary hearing on the matter and then decides the issue." *McInnes v. LPL Financial, LLC,* 466 Mass. 256, 261, 994 N.E.2d 790 (2013). When "there is not such a dispute, the judge resolves the issue as a matter of law." *Ibid.* We resolve this case as a matter of law because there is no dispute as to a material fact with respect to the legal conclusions below. We review matters of law de novo. See *Deutsche Bank Natl. Assn. v. First Am. Title Ins. Co.,* 465 Mass. 741, 744, 991 N.E.2d 638 (2013). We consider now under what circumstances a nonsignatory to an arbitration agreement can be compelled to arbitrate by a signatory to such an agreement, applying the test laid out by **861 the Federal courts, which we find persuasive.[13]

[8] "Absent advance consent to [a contractual] agreement, a party cannot be compelled to arbitrate a dispute."

*Constantino v. Frechette,* 73 Mass.App.Ct. at 354, 897 N.E.2d 1262. See *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *InterGen N.V. v. Grina,* 344 F.3d 134, 137 (1st Cir.2003) *\*319* ( "abecedarian tenet that a party cannot be forced to arbitrate if it has not agreed to do so"). But the obligation to arbitrate is not limited to those who have signed an arbitration agreement. *Thomson–CSF,* 64 F.3d at 776. Exceptions to the general rule binding parties only to arbitration agreements they have signed arise out of common-law principles of agency and contract law. *Ibid.* The Federal courts have recognized six bases for enforcing an arbitration agreement with respect to a nonsignatory: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, (5) estoppel, and (6) third-party beneficiary.[14] See *ibid.* (enumerating the first five bases); *Bridas,* 345 F.3d at 356. See also *InterGen N.V. v. Grina,* 344 F.3d at 145–150. As we shall discuss, these theories do not apply equally in a situation where a signatory is attempting to force a nonsignatory to arbitrate as opposed to the reverse situation. See, e.g., *Bridas, supra* at 363 (as to third-party beneficiary theory).

Of the six bases for mandating arbitration listed above, Collyer argues that under theories of estoppel and agency, Walker is required to arbitrate.

**[9] [10] [11]** a. *Estoppel.* Collyer argues that Walker is bound by estoppel to arbitrate this dispute. "[B]y knowingly exploiting [an] agreement, [a party is] estopped from avoiding arbitration despite having never signed the agreement." *Thomson–CSF,* 64 F.3d at 778. The primary form of estoppel ("direct benefits estoppel") allows a signatory to compel to arbitration a nonsignatory party receiving a direct benefit from an arbitration agreement. *Id.* at 778–779. See *Licata,* 466 Mass. at 804, 2 N.E.3d 840. Conversely, an alternative path to estoppel allows a *nonsignatory* to compel a *signatory* to arbitrate when (a) the nonsignatory has a close relationship with a signatory and (b) the underlying issues for arbitration are intertwined with an agreement the estopped party has actually signed. *Thomson–CSF, supra* at 779. Neither of these forms of estoppel allows Collyer to compel Walker to arbitrate. We address each form in turn.

**[12] [13] [14] [15]** *\*320* i. *Direct benefits estoppel.* For direct benefits estoppel, an entity "knowingly exploiting an agreement with *\*\*862* an arbitration clause can be estopped from avoiding arbitration despite having never signed the agreement." *MAG Portfolio Consult. GMBH v. Merlin Biomed Group LLC.,* 268 F.3d 58, 61 (2d Cir.2001) (*MAG Portfolio* ) (quotation and citation omitted). Someone who "knowingly accepted the

benefits" of such an agreement may be bound by the arbitration clause. *Ibid.,* quoting from *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.,* 9 F.3d 1060, 1064 (2d Cir.1993) (*Deloitte Noraudit* ). The benefits must be direct—flowing directly from the agreement." *MAG Portfolio, supra.* The benefits are indirect—thus not estopping the party—"where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself." *Ibid.*

In arguing that Walker benefited from the arbitration agreement, Collyer contends only that "Dr. Walker, should he have elected to enforce the arbitration provision, could avoid the uncertainty and expense of litigation and a jury trial...." We assume without deciding that Walker could opt into the arbitration. See note 13, *supra.* However, even assuming that Walker *could* avail himself of the arbitration agreement, that does not mean that he *must.* It appears Walker has determined, for whatever reason, that the arbitral forum does not benefit him in this case. The possibility of enforcing the arbitration agreement would provide Walker with some benefit, but this minimal benefit is not enough to compel him to arbitrate against his wishes.[15]

In *Deloitte Noraudit,* the United States Court of Appeals for the Second Circuit held that the plaintiff was estopped from claiming that it was not bound by an arbitration clause because it had knowingly accepted the benefit of an agreement containing the arbitration clause by continuing to use the name "Deloitte" pursuant to that agreement and because it had failed to object to the arbitration provision when it became aware of it. *\*321* 9 F.3d at 1064. Unlike *Deloitte Noraudit,* however, here Walker never expressly availed himself of any benefit flowing from the arbitration agreement. The opportunity to receive income from treating Karl as an attending physician or from Walker's duties as subacute rehab program medical director is not such a benefit. The opportunity to treat Karl cannot be traced to the arbitration agreement because the agreement itself states, in large text at the top of the agreement, that "signing this agreement is not a condition of admission." Compare *Miller v. Cotter,* 448 Mass. at 681–682 & nn. 14, 15, 863 N.E.2d 537. Thus, Walker would have had the opportunity to treat Karl irrespective of whether Karl had signed the arbitration agreement. Also unlike *Deloitte Noraudit, supra* at 1064, it is undisputed that Walker was not even aware of the arbitration agreement prior to these proceedings. Thus, the possibility of being able to avail himself of the arbitration agreement is a minimal indirect benefit that "is not the sort of benefit which this [c]ourt envisioned as the basis for estopping a nonsignatory from

avoiding arbitration." *Thomson–CSF,* 64 F.3d at 779.

Walker's situation is closer to several cases where the Federal courts have refused to bind a party through estoppel than it is to *Deloitte Noraudit, supra.* **863 See, e.g., *MAG Portfolio,* 268 F.3d at 62–63; *Bridas,* 345 F.3d at 362. As discussed in *MAG Portfolio,* any benefit that Collyer might identify "is indirect where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement." *Id.* at 61. As in *Thomson–CSF,* where, notwithstanding the plaintiff's awareness of the arbitration clause in a broader "working agreement," and the indirect benefits the plaintiff received, it was not bound to arbitrate because it had not taken action pursuant to the working agreement, here, Walker has not taken any action pursuant to the arbitration agreement. See *Thomson–CSF,* 64 F.3d at 775–776, 779. Walker has not sued to enforce the arbitration agreement. He has not attempted to compel Collyer to arbitrate—even though the agreement may have given him the right to do so. Compare *Bridas,* 345 F.3d at 362 (no suit brought under contract that included arbitration provision). Contrast *Deloitte Noraudit,* 9 F.3d at 1064. The arbitration agreement here is a discrete document, rather than a part of *322 a larger contract, as in *Deloitte Noraudit.* Thus, other than taking action to compel arbitration, which Walker has not done, the opportunity to exploit the arbitration agreement "to the degree that the cases that consider applying this version of estoppel require," *Bridas, supra,* is simply not present here.

[16] ii. *Alternative form of estoppel.* Nor does the alternative form of estoppel apply in this case. Courts applying the alternative form of estoppel have only allowed a *nonsignatory* to compel a *signatory* to participate in arbitration. See *Thomson–CSF,* 64 F.3d at 779. They have done so when (a) the nonsignatory has a close relationship with a signatory and (b) the underlying issues for arbitration are intertwined with an agreement the estoped party has signed. See *ibid.* There is a significant distinction between forcing a nonsignatory to arbitrate and allowing a nonsignatory to compel a signatory to arbitrate. As stated in *Thomson–CSF,* "the nature of arbitration makes [this distinction] important [because] [a]rbitration is strictly a matter of contract; if the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so." *Ibid.* See *Merrill Lynch Inv. Managers v. Optibase, Ltd.,* 337 F.3d 125, 131 (2d Cir.2003) ( *Merrill Lynch* ). Here, a *signatory* (Collyer) seeks to compel a *nonsignatory* (Walker) to arbitrate on the basis of his relationship with another signatory (The Oaks). But, relying on traditional principles of contract and agency law, the cases

establishing this form of estoppel limit the use of the form to the compulsion of *signatories* to arbitrate. See *Thomson–CSF, supra* at 779; *Merrill Lynch, supra.* Like the primary form of estoppel discussed above, the alternative form of estoppel does not justify compelling Walker to arbitrate.[16]

[17] *323 b. *Agency.* Collyer argues that Walker was an agent of The Oaks in **864 his role as subacute rehab medical director, and thus was bound by the arbitration agreement because of the clause purporting to include "agents" in the agreement's coverage. In the alternative, Collyer argues that Walker is bound as an "apparent agent" of The Oaks. But Collyer relies on a mistaken understanding of the agency exception to the general rule that parties may not be bound by arbitration agreements they did not sign. Ultimately, it is immaterial whether Walker was an agent of The Oaks because the exception only allows agents to bind principals by their actions, rather than vice versa. Walker cannot be compelled to arbitrate by virtue of the agency exception.

[18] [19] "Agency" is one of the well-established exceptions to the general rule that parties cannot be bound by an arbitration agreement they did not sign. See, e.g., *Merrill Lynch,* 337 F.3d at 129, citing *Thomson–CSF.* 64 F.3d at 776. Under "ordinary principals of contract and agency law," see *DK Joint Venture 1.* 649 F.3d at 317, an agency relationship itself is insufficient to compel a nonsignatory *agent* to arbitrate in accordance with an agreement signed by the *principal.* See *ibid.* Once again, it is critical to ask who is seeking to bind whom: the question whether a principal's acts bind an agent is fundamentally different from the question whether an agent's acts bind a principal.[17]

The seminal cases that establish the agency exception pertain to the binding of a principal to arbitrate by virtue of the actions of an agent—not the reverse situation, which we find in this case. See, e.g., *A/S Custodia v. Lessin Intl., Inc.,* 503 F.2d 318, 320 (2d Cir.1974); *Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.,* 663 F.2d 4, 6–7 (2d Cir.1981) (triable question whether an agreement by an agent allegedly on behalf of the principal could afford the principal the right to compel a contracting party to arbitrate).[18]

A close reading of the contemporary cases confirms that the *324 agency exception remains confined to the acts of an agent binding a principal rather than vice versa. In *Bridas,* the United States Court of Appeals for the Fifth Circuit considered whether the actions of the alleged agent (Turkmenneft) could bind the putative principal (the government of Turkmenistan). 345 F.3d at 356–358. The

court concluded that the agreement did not bind the government because Turkmeneft did not sign the agreement as an agent of the government. *Id.* at 358. Similarly, in *Merrill Lynch,* the Second Circuit considered whether one investment firm could be compelled to arbitrate by a customer on the theory that a sister company had signed an arbitration agreement with the customer, acting as agent on behalf of the original firm. 337 F.3d at 128–131. Citing its earlier decision in *Thomson–CSF.* 64 F.3d at 780, the court concluded that the relationship between the companies was an insufficient basis on which to "bind [the] non-signatory on agency principles to an arbitration." *Id.* at 130–131. Although these cases do not explicitly state that the agency exception is limited to circumstances of agents binding principals to arbitrate rather than vice versa, that conclusion emerges from their clear reasoning **865 and consistent outcomes. Moreover, this conclusion accords with general principles of contract and agency law. See *Bel–Ray Co. v. Chemrite (Pty) Ltd.,* 181 F.3d 435, 445 (3d Cir.1999) ("Generally, of course, an agent of a disclosed principal, even one who negotiates and signs a contract for her principal, does not become a party to the contract").

Given this legal analysis, the factual dispute among the parties is immaterial. The parties dispute whether Collyer's claims involve Walker only in his role as attending physician or also in his role as the subacute rehab medical director. They also dispute whether Walker was an agent of The Oaks in his medical director capacity—and thus covered by the arbitration agreement, according to Collyer's reading. Because the applicable law only allows the binding of a principal by an agent's actions rather than vice versa, it is immaterial whether Walker was actually an agent of The Oaks. Whether he was an agent or was solely a nonagent independent contractor, he cannot be compelled to arbitrate this dispute by virtue of any "ordinary principle" of agency law.

[20] Alternatively, Collyer argues that Walker is bound by the *325 agreement as an "apparent agent." We disagree.

Notwithstanding any actions by The Oaks giving authority to Walker, there are no grounds for binding an *agent* to a *principal's* agreement. Apparent authority allows a principal to be bound by the actions of an agent based on "written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf." *Theos & Sons. Inc. v. Mack Trucks, Inc.,* 431 Mass. 736, 745, 729 N.E.2d 1113 (2000), quoting from Restatement (Second) of Agency § 27 (1958). See *Licata.* 466 Mass. at 801–802, 2 N.E.3d 840. These cases do not stand for the proposition that a theory of apparent authority provides a separate route to bind an agent by virtue of his principal's acts. Thus, Walker is no more compelled to arbitrate by a theory of "apparent agency" than he is bound to arbitrate by pure agency principles.[19]

*Conclusion.* As in *Thomson–CSF,* the trial court and the arbitrator here "improperly extended the limited theories upon which [we are] willing to enforce an arbitration agreement against a nonsignatory." 64 F.3d at 780. None of the exceptions to the general rule that parties can only be compelled to arbitrate with their consent apply here. As a nonsignatory, Walker may not be compelled to arbitrate by Collyer, a signatory to the arbitration agreement.

The judgment is reversed, and the case is remanded to the Superior Court for entry of a new judgment declaring that Walker is not bound by the "Voluntary Agreement for Arbitration" and may not be compelled to participate in the arbitration proceeding.[20]

*So ordered.*

**Parallel Citations**

9 N.E.3d 854

Footnotes

1        Of the estate of Karl Collyer.

2        New Bedford Medical Investors, LLC, doing business as The Oaks Nursing Center; and Life Care Centers of America. These
         defendants have not participated in the appeal.

3        For the sake of clarity, we refer to Jennifer Collyer, in her capacity as administratrix of her deceased husband's estate, as
         "Collyer," and to the patient as "Karl."

4        We acknowledge the amicus brief of the Professional Liability Foundation, Ltd.

5    Although Walker stated in his affidavit that he "had no further involvement in the care and treatment" of Karl after his initial examination, the parties dispute whether Walker also was responsible for Karl's care in his capacity as subacute rehab program medical director. As will become clear in our discussion, however, this dispute is not as to a material fact.

6    The December, 2006, contract was amended on July 27, 2009. The amendments do not modify any provisions at issue here.

7    The arbitrator ordered as follows:

> "For the reasons stated above [in the arbitrator's memorandum and order dated January 9, 2012], the Arbitrator concludes, and it is ORDERED, that Charles G. Walker, M.D., is bound, under the terms of the parties' 'Voluntary Agreement for Arbitration,' as a party respondent in this arbitration proceeding."

8    General Laws c. 251, § 2(*b* ), inserted by St. 1960, c. 374, § 1, provides:

> "Upon application, the superior court may stay an arbitration proceeding commenced or threatened if it finds that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily determined, and if the court finds for the applicant it shall order a stay of arbitration; otherwise the court shall order the parties to proceed to arbitration."

9    The parties do not question the appropriateness of our consideration of this appeal. In any event, we exercise our discretion to entertain it. See *Smith v. Arbella Mut. Ins. Co.*, 49 Mass.App.Ct. 53, 54, 725 N.E.2d 1080 (2000), and cases cited.

10    In *Askenazy v. KPMG LLP*, 83 Mass.App.Ct. 649, 657–658, 988 N.E.2d 463 (2013), we applied New York law to determine whether a nonsignatory could be compelled to arbitrate. In *Ross v. Health & Retirement Properties Trust*, 46 Mass.App.Ct. 82, 86, 703 N.E.2d 734 (1998), in dicta, we noted several circumstances in which nonsignatories could be compelled to arbitrate while noting that "[t]he defendants make no such claim in this case."

11    *Johnson* resolved only the narrow question whether a duly authorized health care proxy's signature on an arbitration agreement could be binding on the patient, her principal. 466 Mass. at 780, 2 N.E.3d 849. Concluding that an arbitration was not a health care decision, the Supreme Judicial Court answered the question in the negative. *Id.* at 781, 2 N.E.3d 849. Given the holding of *Johnson*, *Licata* also considered other theories whereby the health care proxy's signature on an arbitration agreement might bind his principal, concluding that, in those circumstances, the principal was not bound. 466 Mass. at 799–804, 2 N.E.3d 840.

12    The parties make no argument that Collyer, as administratrix of Karl's estate, is not bound by the arbitration agreement he signed.

13    As we have noted, our courts have decided the mirror image question, whether a party who did not sign an arbitration agreement can take advantage of an agreement signed by an allied party to force a signatory to arbitrate. Compare *Constantino v. Frechette*, 73 Mass.App.Ct. at 356–359, 897 N.E.2d 1262 (nonsignatory employees of nursing home could not enforce arbitration agreement signed by employer), with *id.* at 357 & n. 11, 897 N.E.2d 1262, discussing *Miller v. Cotter*, 448 Mass. at 681–684, 863 N.E.2d 537 (nonsignatory nursing home employees could compel arbitration).

14    The third-party beneficiary doctrine is similar to the estoppel basis except that courts look to different snapshots in time. *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 n. 7 (3d Cir.2001). For the third-party beneficiary theory, courts look to the intentions of the parties when a contract is signed; for estoppel, courts look to the parties' conduct after a contract is executed. *Ibid.*

15    Because we determine that, even if the arbitration agreement afforded Walker the right to compel some patient to arbitrate, that benefit would not be enough to estop him from seeking to escape arbitration here, we need not decide whether Walker would actually be able to compel a patient to arbitrate based on the language of the agreement. The question whether the agreement gave him those rights is immaterial.

16    As to the related theory that Walker could be compelled to arbitrate as a third-party beneficiary of the arbitration agreement, Collyer did not continue to press the argument in her postargument submission. Nevertheless, even assuming without deciding that Walker is a third-party beneficiary of the arbitration agreement between Collyer and The Oaks, as with the theory of direct benefits estoppel, courts are reluctant to compel a nonsignatory third-party beneficiary to arbitrate. See *Bridas*, 345 F.3d at 363 (court aware of no case where "a third-party beneficiary has been bound to arbitrate a dispute, arising under an agreement to which it is not a party, that the third-party itself did not initiate in court"). Some ten and one-half years after *Bridas*, we are still aware of no such case. Like the United States Court of Appeals for the Fifth Circuit, we decline to break that new ground. See *ibid.*

17    The question presented here also differs from that faced in *Miller v. Cotter, supra,* and *Constantino v. Frechette, supra,* as to whether nonsignatory employees can, if they wish, compel a patient-signatory to arbitrate pursuant to an agreement signed by their employer. See note 13, *supra.*

18    We note also that *Interbras* involves the ability of a nonsignatory to compel arbitration rather than, as here, the possibility that a nonsignatory would be compelled to arbitrate.

19    Collyer also argues that language in the arbitration agreement purporting to bind "directors" compels Walker to arbitrate by virtue of his role as subacute rehab medical *director.* Even assuming this refers to Walker in his capacity as a medical director, this language binds Walker—as a nonsignatory—no more than the language in the agreement purporting to encompass agents. The wording does nothing either to broaden these exceptions or to fit Walker into one of them.

20    Because we conclude that principles of agency and contract law do not allow Collyer to compel Walker to arbitrate this dispute, we need not consider Walker's constitutional claim that compelling him to arbitrate without his consent would violate his right to a trial by jury.

End of Document          © 2014 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT H

COMMONWEALTH OF MASSACHUSETTS

ESSEX ss.                                           SUPERIOR COURT
                                                    CIVIL ACTION NO.

_____
                                            )
KEVIN J. KIELY, ESQ.,                       )
                                            )
        Plaintiff,                          )
                                            )
        v.                                  )
                                            )
JOHN CANTY,                                 )
                                            )
        Defendant.                          )
                                            )
_____)

## [PROPOSED] ORDER

The Complaint in this matter came before the Court on January __, 2015. The Court

ORDERS that the ongoing arbitration, styled *John Canty v. American Express Bank, FSB*, JAMS

Arbitration 1400014758, is hereby STAYED as to Plaintiff Kiely pending further order of this

Court as to whether Kiely is a proper party to the arbitration.


                                   _____
                                   Essex Superior Court


Dated: January ___, 2015